# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**TALK FUSION, INC., a Florida corporation,**

    **Plaintiff,**

v.                                              Case No. 8:11-CV-1134-T-33AEP

**J.J. ULRICH, an individual, JOE READ, an individual, WOWWE, INC., a Nevada corporation, and WOWE MEDIA, LLC, a Nevada limited liability company,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff Talk Fusion, Inc. ("Talk Fusion"), pursuant to Federal Rule of Civil Procedure 65, filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 2) on May 23, 2011, requesting that the Court enter an order enjoining the Defendants from soliciting Talk Fusion associates and customers, and using Talk Fusion's trade secret information. On May 24, 2011, the Court granted Talk Fusion's motion, and entered a Temporary Restraining Order (Dkt. No. 6) against the Defendants, set to expire June 7, 2011. On May 27, 2011, Talk Fusion filed an Amended Motion for Temporary Restraining Order (Dkt. No. 10), requesting that the Court modify the Temporary Restraining Order to enjoin Defendants WowWe, Inc. and WowWe Media, LLC (together as "WowWe"). On May 31, 2011, the Court granted Talk Fusions request to amend the Temporary Restraining Order. (Dkt. No. 11.) On June

---

[1] It must be noted that any of the directives issued in this Report and Recommendation are not final unless adopted by the District Court.

3, 2011, J. J. Ulrich ("Mr. Ulrich") and Joe Read ("Mr. Read"), both appearing *pro se*, filed responses to Talk Fusion's Motion for Preliminary Injunction. (Dkt. Nos. 16, 17.) The Court held a preliminary injunction hearing on June 6, 2011, at which Talk Fusion, Mr. Ulrich, and Mr. Read appeared. (Dkt. No. 35.) At the June 6, 2011 hearing, Mr. Ulrich and Mr. Read agreed to waive the fourteen (14) day notice requirement under Local Rule 4.05(a). Further, the Court indicated that it intended to enter an order recommending to Judge Covington that the request for preliminary injunction as to Mr. Ulrich and Mr. Read be granted, but directed the parties to meet and confer to attempt to come to an agreement as to the scope of the solicitation restrictions. (Dkt. No. 35.) On June 7, 2011, Talk Fusion requested to extend the time of the Temporary Restraining Order (Dkt. No. 32), which the Court granted, extending the Temporary Restraining Order until 5:00 P.M. on June 21, 2011. (Dkt. No. 34.) On June 14, 2011, Talk Fusion filed its Second Amended Complaint (Dkt. No. 42), which supplemented its Motion for Preliminary Injunction (Dkt. No. 2).

On June 9, 2011, following Talk Fusion's service on WowWe, the Court scheduled a preliminary injunction hearing as to WowWe for June 15, 2011. On June 14, 2011, non-resident counsel Christina Minshew Lewis ("Ms. Lewis") filed a notice of appearance on behalf of Mr. Ulrich, Mr. Read, and WowWe. (Dkt. No. 46.) At the June 15, 2011 hearing, Mr. Ulrich indicated that he was now being represented by Ms. Lewis, and the parties indicated that they had not been able to come to an agreement as to the scope of the solicitation restrictions. Oral argument was heard by the parties, and the Court took under advisement the motion for preliminary injunction as to WowWe. (Dkt. No. 51.)

### *I. Factual Background*

Talk Fusion is a direct sales company that markets its products through the use of independent associates ("Associates"), who act as both clients and sales-people. (Dkt. No. 42 at ¶8.) Talk Fusion markets and sells various video communication products for personal and business use, including web-based software that allows a customer to create video e-mails. (Dkt. No. 42 at ¶8.) Talk Fusion's business model involves selling products by Associates who develop their own sales force of recruited Associates, effectively creating their own sales organizations, which they oversee. (Dkt. No. 42 at ¶22.) These organizations are referred to as either "downlines" or "genealogies." (Dkt. No. 42 at ¶22.)

On October 21, 2010 and February 9, 2011, Mr. Ulrich and Mr. Read respectively became Associates of Talk Fusion. (Dkt. No. 42 at ¶9.) At the June 6, 2011 hearing, Mr. Ulrich and Mr. Read acknowledged that upon becoming Associates for Talk Fusion, they agreed to Talk Fusion's Statement of Policies and Procedures (the "Policies") and Terms of Service.[2] (*See* Dkt. No. 42 Exs. C, D.) Talk Fusion's Policies, Section 3.7.1 contain a non-solicitation clause, stating that:

> **3.7.1 - Nonsolicitation**
> Talk Fusion Associates are free to participate in other multilevel or network marketing business ventures or marketing opportunities (collectively "network marketing"). However, during the term of this Agreement, Associates may not directly or indirectly Recruit other Talk Fusion Associates or Customers for any other network marketing business. Following the cancellation of an Associate's Independent Associate

---

[2] At the June 6, 2011 hearing, Mr. Ulrich noted that he had not signed the Policies submitted by Talk Fusion sponsored by Associates Robert and Bryan Conley, but instead had agreed to the Policies sponsored by Associate Maurice Walker.

> Agreement, and for a period of six calendar months thereafter, with the exception of an Associate who is personally sponsored by the former Associate, a former Associate may not Recruit any Talk Fusion Associate or Customer for another network marketing business. Associates and the Company recognize that because network marketing is conducted through networks of independent contractors dispersed across the entire United States and internationally, and business is commonly conducted via the internet and telephone, an effort to narrowly limit the geographic scope of this non-solicitation provision would render it wholly ineffective. Therefore, Associates and Talk Fusion agree that this non-solicitation provision shall apply to all markets in which Talk Fusion conducts business.

(Dkt. No. 42 at ¶30.) In addition, the Policies classify the downlines and/or genealogies as proprietary, confidential, and restricted information, as follows:

> **3.7.4 - Downline Activity (Genealogy) Reports**
> Downline Activity Reports are available for Associate access in their official Back Office. Associate access to their Downline Activity Reports is password protected. **All Downline Activity Reports and the information contained therein are confidential and constitute proprietary information and business trade secrets belonging to Talk Fusion.** Downline Activity Reports are provided to Associates in strictest confidence and are made available to Associates for the sole purpose of assisting Associates in working with their respective Downline Organizations in the development of their Talk Fusion business. Associates should use their Downline Activity Reports to assist, motivate, and train their downline Associates. The Associate and Talk Fusion agree that, but for this agreement of confidentiality and nondisclosure, Talk Fusion would not provide Downline Activity Reports to the Associate. An Associate shall not, on his or her own behalf, or on behalf of any other person, partnership, association, corporation or other entity:
> - Directly or indirectly disclose any information contained in any Downline Activity Report to any third party;
> - Directly or indirectly disclose the password or other access code to his or her Downline Activity Report;
> - Use the information to compete with Talk Fusion or for any purpose other than promoting his or her Talk Fusion business; Recruit or solicit any Associate or Customer of Talk Fusion listed on any report, or in any manner attempt to influence or induce any Associate or Preferred Customer of Talk Fusion, to alter their business relationship with Talk Fusion; or
> - Use or disclose to any person, partnership, association, corporation, or other entity any information contained in any Downline Activity Report.

>  Upon demand by the Company, any current or former Associate will return the original and all copies of Downline Activity Reports to the Company.

(Dkt. No. 42 at ¶17.) Mr. Ulrich and Mr. Read created the websites www.talkfusionservice.com and www.thetalkfusionteam.com, containing a collection of videos already appearing on the Talk Fusion website. (Dkt. No. 42 at ¶13.) Talk Fusion alleges that Mr. Ulrich and Mr. Read required Talk Fusion Associates to enter their identification numbers and passwords in order to gain access to these websites, and subsequently used this identification information to access Talk Fusion's servers to "gather confidential information, including Talk Fusion's Associate's geneology [sic] and back office." (Dkt. No. 42 at ¶¶12-15, 23.) On May 9, 2011, in response to alleged reports by Talk Fusion Associates that Mr. Ulrich was marketing to them the services of WowWe, a competitor, in violation of the Policies, Talk Fusion terminated Mr. Ulrich, and Mr. Read resigned from Talk Fusion. (Dkt. No. 42 at ¶¶21-28.) Talk Fusion alleges that after May 9, 2011, Mr. Ulrich continued to use the trade secret information to target, market to, and solicit Talk Fusion Associates, whom they did not personally sponsor, to join WowWe. (Dkt. No. 42 at ¶¶31, 32.)

Talk Fusion argues that it is entitled to injunctive relief as to the Defendants, pursuant to Florida Statutes Section 542.335, which governs non-solicitation clauses, and Florida Statutes Section 688.003, which governs misappropriation of trade secrets.[3] *See* Fla. Stat. § 542.335 (1996); Fla. Stat. § 688.003 (1988). Specifically, Talk Fusion requests that the Court enter an order enjoining Mr. Ulrich and Mr. Read from violating the non-solicitation covenants under the Policies, and enjoining Mr. Ulrich, Mr. Read, and WowWe from using or disclosing Talk

---

[3] Under Section 8.4 of Talk Fusion's Policies, "[t]he law of the State of Florida shall govern all other matters relating to or arising from the Agreement." (Dkt. No. 42 Ex. 3 at 24.)

Fusion's "confidential and proprietary information and trade secrets, and requiring the return of [the] same ...." (Dkt. No. 42 at 10.)

## *II. Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court must consider whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) that the moving party will suffer irreparable harm unless the injunction issues; (3) the threatened harm to the movant outweighs the potential damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Further, courts in the Eleventh Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors. *See Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989); *see also Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 708 n. 2 (11th Cir.1990) (noting that the preliminary injunction was denied because the movant failed to show a threat of irreparable harm, even though it established a substantial likelihood of success on the merits).

### III. Discussion

#### A. Likelihood of Success on the Merits

A likelihood of success on the merits is generally the most important factor when considering whether to grant a motion for preliminary injunction. *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000)). In order to satisfy this element, the movant requires a showing of "only *likely*, rather than *certain*, success." *Home Oil Company, Inc. v. Sam's East, Inc.*, 199 F.Supp.2d 1236, 1249 (M.D.Ala. 2002) (emphasis in original). Further, in cases where the "'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)).

In this case, it is uncontested that during the pertinent time period, Mr. Ulrich and Mr. Read had access to and maintained the genealogy information at issue on their websites. Further, under Florida Statutes Section 688.002(4), the Court finds that the genealogy information qualifies as a "trade secret" since it "derives independent economic value" and was the subject of efforts to maintain its secrecy. *See* Fla. Stat. § 688.003(4) (1988). Talk Fusion has not, however, provided substantial evidence demonstrating that the Defendants "misappropriated" these trade secrets under the statute. Nevertheless, the "[a]ctual *or threatened* misappropriation [of trade secrets] may be enjoined." *See* Fla. Stat. § 688.003(1) (1988) (emphasis added). Thus, the Court finds that Talk Fusion has demonstrated, at the very least, the threat of misappropriation of its trade secrets, thus warranting a preliminary injunction under the statute. *Id*. In terms of

7

Talk Fusion's claim for breach of contract, the Court finds that under Florida Statutes Section 542.335, the non-solicitation covenants within Talk Fusion's Policies are enforceable, and Talk Fusion has submitted evidence that Mr. Ulrich engaged in solicitation of Talk Fusion Associates. *See* Fla. Stat. § 542.335 (1996). Namely, Mark Robinson, a Talk Fusion Associate, claims in his declaration that "in an attempt to promote I Wow We and solicit me, Ulrich represented that Minh Ho, whom I know to be the top income earner at Talk Fusion in the United states, had joined I Wow We." (Dkt. No. 29 at 3.)

Based on the evidence presented thus far, the Court finds that Talk Fusion has demonstrated a likelihood of success on the merits as to its claims for misappropriation of trade secrets and breach of contract. Some ambiguity still remains as to the role and intent of WowWe in facilitating the alleged unlawful solicitation and misappropriation, and Mr. Ulrich and/or Mr. Read's alleged cultivation and dissemination of trade secret information. Nevertheless, since the remaining factors weigh heavily in favor of granting the preliminary injunction, it is clear that Talk Fusion has demonstrated at least a "substantial case on the merits" as required to meet the first prong in the Eleventh Circuit. *Schiavo v. Schiavo*, 357 F.Supp.2d 1378, 1383 (M.D.Fla. 2005), aff'd, 403 F.3d 1223 (11th Cir.2005) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)).

### *B. Irreparable Harm*

The Eleventh Circuit has stressed that the threat of irreparable harm is an absolute prerequisite to the issuance of injunctive relief. *See Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990) (noting that a showing of irreparable harm is "the sine qua non of injunctive relief."). The Supreme Court has held that "[t]he basis of

injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). In this case, Talk Fusion alleges that because of the unlawful actions of the Defendants, "Talk Fusion has sustained and will continue to sustain irreparable injury unless defendants are immediately enjoined." (Dkt. No. 42 at 9.) Specifically, Talk Fusion alleges that the Defendants will continue to solicit Talk Fusions Associates in violation of its non-solicitation covenants. (Dkt. No. 42 at 8.) For alleged violations of a covenant not to compete or solicit arising under Florida Statutes Section 542.335, upon a showing of a legitimate business interest, as is demonstrated in this case, irreparable harm is presumed. *Continental Group, Inc. v. KW Property Management, LLC*, 622 F.Supp.2d 1357, 1377-78 (S.D.Fla 2009). Since the Defendants have not submitted evidence to rebut this presumption, the Court finds that Talk Fusion has sufficiently demonstrated the threat of irreparable harm. Further, the presumption of irreparable harm also exists in cases involving alleged misappropriation of trade secrets. *See Stoneworks Inc. v. Marble and Granite Inc.*, Case No. 98-2017-CIV-HIGHSMITH, 1998 WL 998962 at *6 (S.D.Fla. Nov. 20, 1998) (nothing that "if the court finds that a former employee used a specific trade secret in his new employment, then there is a presumption of irreparable injury."). Thus, it is clear that Talk Fusion has satisfied the second prong in considering whether to grant its motion for preliminary injunction.

### *C. Balancing of Hardships*

Talk Fusion faces irreparable injury in the form of lost customers, goodwill, and misappropriated trade secrets. The Defendants, on the other hand, have not demonstrated any potential damage that a narrowly preliminary injunction may cause. The Defendants argued at

the June 15, 2011 hearing that the issuance of a preliminary injunction would potentially be looked at negatively by WowWe's customers. The Court, however, is unpersuaded by the Defendants' argument. As such, the Court finds that the threatened injury to Talk Fusion clearly outweighs the harm that a narrowly tailored preliminary injunction might cause the Defendants. *See Southeastern Mechanical Services, Inc. v. Brody*, Case No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046 at *16 (M.D.Fla. Oct. 15, 2008).

### *D. Public Interest*

Lastly, the Court must look at whether "granting [a] preliminary injunction will disserve the public interest." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 n. 13 (11th Cir.1985). Here, a preliminary injunction would affirmatively serve the public interest by protecting businesses from misappropriation of trade secrets and upholding the terms of enforceable contracts. Further, a preliminary injunction would also help to eliminate any potential competitive advantage the Defendants may gain in the time-sensitive, social media driven business of digital sales.

### *E. Requested Relief*

Talk Fusion seeks to enjoin Mr. Ulrich and Mr. Read from "violating their nonsolicitation covenants with Talk Fusion, including but not limited to recruiting Talk Fusion Associates who they did not personally sponsor and enjoining I Wow We from soliciting Talk Fusion Associates in concert with Ulrich and Read ...." (Dkt. No. 42 at 10.) In addition, Talk Fusion seeks to enjoin the Defendants from "using or disclosing Talk Fusion's confidential and proprietary information and trade secrets, and requiring the return of [the] same ...." (Dkt. No.

42 at 10.) Although injunctive relief is warranted, the scope of relief and means of achieving this relief sought by Talk Fusion is too broad.

Ample grounds exist to enjoin the Defendants from using or disclosing Talk Fusion's confidential and proprietary information and trade secrets, and to require the Defendants to return such information if in their possession (which they deny). However, Talk Fusion does not have free reign as to the scope of its request concerning the non-solicitation covenants under Talk Fusion's Policies. Specifically, while Mr. Ulrich and Mr. Read may not solicit Talk Fusion Associates who were Associates during their time with Talk Fusion, the non-solicitation clause does not prohibit Mr. Ulrich and Mr. Read from soliciting prospective Talk Fusion Associates or current Talk Fusion Associates who became Associates after May 9, 2011, the date Mr. Ulrich and Mr. Read ceased to work for Talk Fusion. In addition, the non-solicitation covenants must be "reasonable in time, area, and line of business" in order to be enforceable. *See* Fla. Stat. § 542.335(1) (1996). Here, the non-solicitation clause only applies for a six (6) calendar month period following the cancellation of an Associate's contract with Talk Fusion. (Dkt. No. 42 at ¶30.) For restrictive covenants sought to be enforced against a former employee, Florida Statutes Section 542.335(1)(d)(1) creates a rebuttable presumption of reasonableness for any time restraint of six (6) months or less in duration. *See* Fla. Stat. § 542.335(1)(d)(1) (1996). In this case, since Mr. Ulrich and Mr. Read's contracts were cancelled on May 9, 2011, the non-solicitation covenants may be enforced until November 9, 2011. In terms of geographic scope, Mr. Ulrich and Mr. Read agreed under the Policies that "because network marketing is conducted through networks of independent contractors dispersed across the entire United States and internationally, and business is commonly conducted via the internet and telephone, an effort to narrowly limit

the geographic scope of this non-solicitation provision would render it wholly ineffective." (Dkt. No. 42 at ¶30.) Thus, the non-solicitation covenant "shall apply to all markets in which Talk Fusion conducts business." (Dkt. No. 42 at ¶30.) In light of the dynamic and wide-reaching nature of digital sales and social media-based marketing, and the highly restrictive temporal scope of the restrictive covenant, the Court finds that the geographic scope of the non-solicitation clause is reasonable and enforceable.

Lastly, the Court is mindful of Mr. Ulrich and Mr. Read's interests in being able to conduct network marketing work that does not conflict with Talk Fusion's non-solicitation covenants. Therefore, should Mr. Ulrich and/or Mr. Read decide to conduct network marketing in which prohibited Talk Fusion Associates may be targeted, albeit unintentionally, Mr. Ulrich and/or Mr. Read shall provide to Talk Fusion's counsel the list of all individuals to be targeted (hereafter as the "Customer List"). The Customer List shall only be reviewed by Talk Fusion's attorneys and shall be designated "Attorney's Eyes Only." After the Customer List is turned over, Talk Fusion's counsel shall have seven (7) days to notify Mr. Ulrich and/or Mr. Read of which individuals were/are Talk Fusion Associates covered by the non-solicitation covenants under the Policies. The Court notes that this exchange of names may be an ongoing process as Mr. Ulrich and/or Mr. Read seek to conduct business through network marketing. *See Southeastern Mechanical Services, Inc. v. Brody*, Case No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046 at *16-17 (M.D.Fla. Oct. 15, 2008) (employing a similar customer list exchange to facilitate the enforcement of a preliminary injunction seeking to prevent the defendants from soliciting business from the plaintiff's customers).

Regarding Talk Fusion's request that the Court enjoin WowWe "from soliciting Talk Fusion Associates in concert with Ulrich and Read," (Dkt. No. 42 at 10) the Defendants argue that "[c]ompetition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will." (Dkt. No. 47 at 4.)[4] The Defendants cite to a case involving similar facts, *Advantage Digital Systems v. Digital Imaging*, in which the court of appeals held that the lower court erred in enjoining Advantage, the equivalent to WowWe, from soliciting the movant's customers. *Advantage Digital Systems, Inc. v. Digital Imaging Services, Inc.*, 870 So.2d 111, 116 (Fla. 2d DCA 2003). While the Defendants are not wrong in their reliance on *Digital* for this narrow point of law, the Defendants fail to recognize that Talk Fusion's request contains the key operative words, "*in concert*" with Mr. Ulrich and Mr. Read, as opposed to requesting that WowWe be enjoined from *any* solicitation of Talk Fusion's Associates. In addition, the court in *Advantage Digital Systems* noted that even though Advantage would not be enjoined from soliciting the movant's customers, "Advantage cannot, however, assist [the movant's former employees] in breaching their noncompetition agreements with digital." *Advantage Digital Systems, Inc. v. Digital Imaging Services, Inc.*, 870 So.2d 111, 116 (Fla. 2d DCA 2003). Further, "[i]f the circuit court enters a new injunction against those employees, Advantage must insure that they do not violate that restraint." *Advantage Digital Systems, Inc. v. Digital Imaging Services, Inc.*, 870 So.2d 111, 116 (Fla. 2d DCA 2003). Thus, while WowWe is not enjoined from independently

---

[4] Dkt. No. 47, the Defendants' Response to Plaintiff's Request for a Temporary Injunction, was terminated by the clerk for being filed with the wrong event code. Counsel was directed to refile, but has yet to do so.

soliciting Talk Fusion customers for business, WowWe is enjoined from soliciting Talk Fusion Associates *in concert* with Mr. Ulrich and Mr. Read.

### F. Arbitration Argument

In its Motion to Compel Arbitration (Dkt. No. 45) and at the June 15, 2011 hearing, the Defendants argue that this Court should not rule on the motion for preliminary injunction in light of the arbitration clause under Talk Fusion's Policies. The arbitration clause states:

> **8.3 - Arbitration**
> **Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.**
> ...
> Nothing in these Policies and Procedures shall prevent Talk Fusion from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available to safeguard and protect Talk Fusion's interest prior to, during or following the filing of any arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding.

(Dkt. No. 42 Ex. 3 at 24.) Here, the arbitration clause is clearly inapplicable to WowWe because it is not a party to Talk Fusion's Policies. *See Wine Not, Intl. v. 2atec, LLC*, Case No. 8:06-CV-117-T-23, 2006 WL 1766508 at *12 (M.D.Fla. June 26, 2006) (citing *American Express Financial Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (noting that "the FAA does not require parties to arbitrate when they have not agreed to do so")). However, the question arises, whether the Court may enter a preliminary injunction as to Mr. Ulrich and Mr. Read in spite of the arbitration clause. While there appears to be no Eleventh Circuit cases on point as to this issue, a number of courts of appeals have considered the issue and, with one exception, have held that a district court may grant preliminary injunctive relief pending arbitration, if the requirements for injunctive relief are met. *See generally Teradyne, Inc. v.*

14

*Mostek Corp.*, 797 F.2d 43 (1st Cir.1986); *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124 (2nd Cir.1984); *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir.1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir.1985); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir.1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211, 213-14* (7th Cir.1993); *see also PMS Distrib. Co. v. Huger & Suhner, A.G., 863 F.2d 639* (9th Cir.1988) (relying on foregoing decisions of First, Second and Seventh Circuits to authorize issuance of writ of possession pending arbitration); *contra Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286 (8th Cir.1984).  Since the Court has already determined that the conditions for preliminary injunction have been met, injunctive relief is appropriate in spite of the arbitration clause.  Notwithstanding this basis for injunctive relief, the Court also notes that the Defendants have failed to argue why the plain language of the arbitration clause, which specifically carves out an exception for when a party seeks injunctive relief, should not allow the Court to rule on the motion for preliminary injunction.  Thus, the Court finds that there are two independent bases under which the Court may grant injunctive relief in this case despite the existence of the arbitration clause under the Policies.

### *IV. Conclusion*

Upon due consideration, and for the foregoing reasons, it is **RECOMMENDED** that Talk Fusion's Motion for Preliminary Injunction (Dkt. No. 2)[5] be **GRANTED** as follows:

---

[5] Dkt. No. 2, Talk Fusion's original Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, was granted by the Court on May 24, 2011 as to the requested temporary restraining order. (Dkt. No. 6.) However, the Court has yet to rule on Talk Fusion's request for a preliminary injunction within the original motion (Dkt. No. 2). For the purposes of this Report and Recommendation, the Court has construed Dkt. No. 2 in

1. Mr. Ulrich and Mr. Read are enjoined until November 9, 2011 from recruiting Talk Fusion Associates for any other network marketing business, unless:

    a. An Associate was personally sponsored by the individual seeking to conduct network marketing; or

    b. An Associate joined Talk Fusion after May 9, 2011.

2. If Mr. Ulrich and/or Mr. Read wishes to conduct network marketing business in which prohibited Associates may be recruited, albeit unintentionally, Mr. Ulrich and/or Mr. Read shall supply Talk Fusion's counsel with the prospective Customer List for screening. The Customer List shall only be viewed by Talk Fusion's counsel, shall be designated "Attorney's Eyes Only," and Talk Fusion's counsel shall have seven (7) days to notify Mr. Ulrich and/or Mr. Read of any conflicting names to be removed from a given network marketing operation.

3. WowWe shall be enjoined from aiding Mr. Ulrich or Mr. Read in the solicitation of prohibited Talk Fusion Associates, or soliciting Talk Fusion Associates in concert with Mr. Ulrich or Mr. Read.

4. The Defendants shall be enjoined from using or disclosing Talk Fusion's confidential and proprietary information and trade secrets, and shall immediately return any such information if in their possession.

---

conjunction with Talk Fusion's Second Amended Complaint (Dkt. No. 42), which also contains a request for preliminary injunction.

**IT IS SO REPORTED** at Tampa, Florida on this 21st day of June, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Virginia M. Hernandez Covington

Counsel of Record